GEORGE D. GLAUNER and GEORGE D. BROWN, Appellants

v.

CHARLES MALONE and NORMA MALONE

and

DONALD MAXWELL, Intervenor

No. 14,131

United States Court of Appeals

Third Circuit

Argued at Christiansted January 30, 1963

Decided April 3, 1963

*See, also, 316 F.2d 291*

FRANCIS J. CAREY, JR., ESQ. (TOWNSEND, ELLIOTT & MUNSON), Philadephia, Pa., *for appellants*

WILLIAM W. BAILEY, ESQ. (BAILEY AND WOOD), Charlotte Amalie, St. Thomas, Virgin Islands, *for Donald Maxwell, Intervenor*

WILLIAM H. D. COX, ESQ. (COX & BORNN), St. Thomas, Virgin Islands, *for appellees Malone*

Before MARIS, WOODBURY and HASTIE, *Circuit Judges*

HASTIE, *Circuit Judge*

This is an appeal by the original plaintiffs from a judgment in favor of an intervening claimant in an action for specific performance of a contract to sell real property.

Charles and Norma Malone, the defendants, are the owners of the parcel in question which adjoins their home site. Both the appellants and the intervenor, Maxwell, claim to have valid contracts with the Malones for the purchase of the land. The Malones recognize that they are obligated to sell to someone and that the essential terms of

the alleged contracts with appellants and with the intervenor are the same. We have to decide which of the rival claimants is entitled to buy the property.

The district court's findings of fact, supplemented by undisputed testimony and exhibits, disclose the following course of events. On May 19, 1961, the Malones signed and sent to the plaintiffs a proposed contract to sell Parcel 21B, Estate Mandahl, for a consideration upon which the parties had already agreed in informal negotiation. On May 31, 1961, the plaintiffs signed the agreement but did not inform the Malones of this action pending further discussion of the purchasers' right to accelerate mortgage payments and their desire to provide in advance for the future release of part of the land from the mortgage after payment of a certain amount of the purchase price. On June 12, 1961, the parties and their attorneys met and reached an agreement on these points, which were to be covered by a separate letter agreement without altering the contract of sale. However, at that meeting the plaintiffs' attorney stated that he had learned of a recorded agreement between the Malones and a former owner of land adjoining the Malones' holdings which, among other things, purported to give the neighboring landowner, E. Nicholas Sargent, and his heirs and assigns, an option in the form of a first refusal for the purchase of land which included Parcel 21B. After discussion of this discovery the attorneys parted with a view to further investigating the matter.

The court below found that during the discussion on June 12th, counsel for the Malones expressed the thought that "any further negotiations" between the Malones and the plaintiffs "would have to be discontinued" pending determination of their situation under the Sargent agreement. On this basis the court concluded as a matter of law that "the offer [to sell] was withdrawn . . . or at

least was supended" pending determination of third-party rights.

We think that what was said and done at the June 12th meeting was neither intended nor understood by those who were present to mean that the offer to sell had been revoked. Except for clearing up the question of the option, no further negotiations between the Malones and the plaintiffs were needed. The basic contract had already been signed by the Malones and delivered to the plaintiffs, and the two outstanding matters which had been carried over to the meeting had been resolved, with the parties agreeing to incorporate their understanding in a letter of amendment to the contract of sale. At no time before the bringing of the present suit did the Malones request that the contract be returned or did their counsel offer to return a $2,400 check which had been deposited with him as earnest. Both at the June 12th meeting and in subsequent communications the Malones or their agents expressed continuing willingness to sell to the plaintiffs on the terms which had been mutually agreed. The lawyer who represented the plaintiffs at the June 12th meeting testified, under cross-examination by counsel for the Malones, that he remembered that "the essence of what you said and what I said was that we could not proceed to close until we have resolved the situation with respect to this option and right of way". We recognize that "to close", in the context of real property transactions, means to make the formal transfer of title. Finally, the Malones' attorney took the stand and testified that during the course of the discussion, he said to one of the plaintiffs, " 'Well, Doctor Glauner, you certainly don't want to buy yourself a lawsuit, and here you've got a situation which can result in a lawsuit.' Well, he said he didn't, and it was agreed that I would try to straighten it out." There was no evidence of anything said or done which would have led the plaintiffs to believe that the deal was off; on the contrary, the evi-

435

dence concerning the June 12th meeting clearly indicates that if the plaintiffs wanted to go ahead in spite of whatever litigation they might incur, the Malones' offer was still outstanding for them to accept.

Thereafter, the Malones' attorney communicated with the intervenor, to whom Dr. Sargent's rights under his agreement had been assigned, and learned that the intervenor would like to buy the Malone property on the terms already offered to plaintiffs. Concerned by the course the matter was taking, the plaintiffs demanded that the Malones consummate the proposed sale to them and on August 21, 1961, recorded the contract of sale which they had signed on May 31st. Finally, on September 5th, the Malones and the intervenor, with notice of the plaintiffs' recorded contract of sale, signed a contract of sale for the same property on essentially the same terms.

 To resolve this controversy we must examine the terms and the history of the Sargent agreement. Parcel 21B and other land of the Malones lies between Parcel 22, formerly owned by E. Nicholas Sargent, and a public road. An agreement between these adjoining landowners, executed in April 1957 and amended in June 1957, provided that "in consideration of the promise of Dr. E. Nicholas Sargent, his heirs and assigns to cut, bulldose [sic], and construct a dirt road, at their own expense, from the public road into Plot No. 21 of Estate Mandahl . . . to provide access to Parcel No. 22 of Estate Mandahl", the Malones undertook to grant Dr. Sargent a perpetual right of way over the new road he was to construct. In addition the right of the owners of Parcel 21 to enjoy the use of the new road was expressly reserved. It was further provided that "for the same consideration, the undersigned, CHARLES MALONE, hereby give [sic] and grant [sic] unto Dr. E. Nicholas Sargent, his heirs and assigns, an Option to Buy the said Plot No. 21 of Estate Mandahl for such price as

shall be offered to me by any bona fide purchaser".

This agreement is clear and explicit in making the construction of a road for the benefit of both parcels of land the performance required in exchange for a first refusal of the Malone land. Four years elapsed between the execution of this agreement in mid-1957 and the emergence of the present controversy in 1961. In the meantime, Dr. Sargent had sold his land without building the proposed access road. His successors took no steps to that end. In this suit the intervenor does not contend that either he or any predecessor in title has ever undertaken to perform the obligation of Sargent under the 1957 agreement. Certainly such non-action over a four year period is an unreasonable delay in the performance of the promise to build a new road.

Here we think is the plainest failure of consideration. The intervenor is asserting a right to the performance of the Malones' promise to Sargent despite the total failure of either Sargent or his successors to perform or tender performance of the reciprocal promise which was the sole consideration for the Malones' undertaking. It is clear that under such circumstances the Malones' promise is unenforceable. Restatement, Contracts, § 274; see 6 Corbin, Contracts, 1962, §§ 1252, 1253, 1255. They were free to sell to any prospective purchaser without according Dr. Sargent or his successor a first refusal.

In these circumstances the contract of sale executed by the plaintiffs and the Malones, as recorded on August 21st, was fully effective. The intervenor could acquire nothing under his subsequent contract, executed on September 5th with notice of the plaintiffs' prior claim and of the Malones' obligation to honor it.

The judgment will be reversed and the cause remanded for the entry of an appropriate judgment for the plaintiffs.